# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN JOSEPH ROTHENBECKER, JR. and SHEILA ROTHENBECKER, his wife, | NO. 3:17-CV-0585 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| 3M COMPANY, | |
| Defendant. | |

## **MEMORANDUM**

Presently before me is the Motion for Summary Judgment (Doc. 18) filed by Defendant 3M Company ("3M"). John Joseph Rothenbecker, Jr. ("Rothenbecker") claims that he was exposed to harmful levels of respirable silica when drilling or cutting concrete while wearing 3M respirators during his career as a sheet metal worker. After being diagnosed with silicosis, Rothenbecker and his wife (collectively, where appropriate, "Plaintiffs") commenced this action asserting strict liability and negligence claims against 3M as well as a derivative loss of consortium cause of action. 3M now argues that it is entitled to judgment as a matter of law on Plaintiffs' strict liability and negligence claims for lack of evidence that its respirators were the proximate cause of Rothenbecker's injuries. Because a dispute of material fact exists as to this issue, 3M's motion for summary judgment will be denied.

## **I. Background**

The facts relevant to the instant motion are brief and largely not in dispute. For approximately four (4) years beginning in 1984, Rothenbecker worked as an apprentice at Power Mechanical, where his duties included cleaning up the shop, loading trucks, and making deliveries. (*See* 3M's Statement of Material Facts "3M's SMF", ¶ 2; Plaintiffs' Statement of Material Facts "Plfs.' SMF", ¶ 2). Rothenbecker would also go to job sites to clean and cut concrete holes during this time. (*See*

Rothenbecker's SMF, ¶ 2).

From 1989 until about 2001, Rothenbecker worked as a journeyman sheet metal worker at various different construction sites through the local sheet metal workers union. (*See* 3M's SMF, ¶ 3; Rothenbecker's SMF, ¶ 3). Throughout his time as a journeyman, Rothenbecker's job generally involved two (2) hours per day of drilling, cutting, or chipping concrete. (*See* 3M's SMF, ¶ 4; Rothenbecker's SMF, ¶ 4). When drilling into concrete, Rothenbecker would wear a 3M mask. (*See* Rothenbecker Dep., 97:17-98:5; 194:9-12). Once Rothenbecker moved into more of a supervisory role, he was not provided breathing equipment because he was not hands-on drilling concrete. (*See id*. at 219:6-20; *see also id*. at 20:9-21:22).

Rothenbecker stopped working in April or May 2015. (*See id*. at 33:7-13). He learned that he had silicosis that summer. (*See id*. at 14:15-20, 70:24-71:6, 216:17-20).

Based on the foregoing, Plaintiffs commenced this action against 3M on March 13, 2017 in the Court of Common Pleas of Luzerne County, Pennsylvania. (*See* Doc. 1-1, *generally*). In the Complaint, Plaintiffs assert claims for: (1) negligence (Count One); (2) strict liability (Count Two); (3) punitive damages (Count Three); and (4) loss of consortium (Count Four). (*See id*.).

3M timely removed the action to this Court, (*see* Doc. 1, *generally*), and filed an Answer with Affirmative Defenses. (*See* Doc. 3, *generally*). Discovery ensued. At the close thereof, 3M filed the instant motion for summary judgment. (*See* Doc. 18, *generally*). That motion is fully briefed and ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues

2

of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

The product that is predominantly at issue here, the 3M 8710 respirator, received a certificate of approval from the National Institute of Occupational Safety and Health ("NIOSH") and the U.S. Bureau of Mines ("USBM") on May 24, 1972 after the NIOSH and USBM jointly enacted respirator regulations to oversee the performance and quality of respiratory equipment. *See Kilty v. Weyerhaeuser Co.*, No. 16-715, 2018 WL 2464470, at *2 (W.D. Wisc. June 1, 2018) (citing 30 C.F.R. § 11).

"The regulations provided that respirators shall be considered approved for use 'only where such respirators are the same in all respects as those respirators which have been approved after meeting the minimum requirements for performance and respiratory protection prescribed in Part 11.'" *Id*. (quoting 30 C.F.R. 11.2).

The 8710 respirator was introduced by 3M "for protection against pneumoconiosis-producing and fibrosis-producing dusts . . . ." *3M Co. v. Johnson*, 895 So. 2d 151, 155 (Miss. 2005). "The United States Occupational Safety and Health Administration ("OSHA") approved the 8710 respirator for use in environments where exposures to certain substances . . . did not exceed ten times the permissible exposure limit ("PEL")." *Id*.; *see also* 29 C.F.R. § 1910.134(d)(3)(i)(A) & Table 1.[1]

Rothenbecker claims that he was overexposed to respirable silica when cutting or drilling concrete during his career as journeyman even though he wore a 3M respirator. As a result of the failings of these respirators, Rothenbecker asserts that 3M is liable in tort under both negligence and strict liability theories. Rothenbecker's strict liability cause of action encompasses both warning and design defects.

Under Pennsylvania law, "plaintiffs seeking relief under a strict product liability cause of action must prove that 'the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm.'" *High v. Pennsy Supply, Inc.*, 154 A.3d 341, 345-46 (Pa. Super. Ct. 2017) (quoting *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 354-55 (Pa. Super. Ct. 2015)). "A product may be found to be defective based on proof of any one of three conditions: a manufacturing defect in the product itself, a defect in the product's design, or a failure of the manufacturer to warn of the product's danger or to instruct on the proper use of the product." *Id*. at 346 (citing *Weiner v. Am. Honda Motor Co.*, 718 A.2d 305, 307 (Pa.Super. 1998)).

---

[1] OSHA did not promulgate regulations for the control of airborne silica particles until 2016. (*See* Dr. Rose report, 4); *see also* 29 C.F.R. §§ 1910.1053, 1926.1153. Before that, the only silica-related OSHA regulations were applicable to sandblasting and the PEL. (*See* Dr. Rose report, 4).

> The law governing strict products liability actions in Pennsylvania has been developed based upon the principles outlined in Section 402A of the Second Restatement of Torts, which provides as follows:
>
> **§ 402A Special Liability of Seller of Product for Physical Harm to User or Consumer**
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Id.* (emphasis omitted) (citing Restatement (Second) of Torts, § 402A (1965)).[2]

A negligence claim requires proof of "'[1] the presence of a legal duty or obligation; [2] a breach of that duty; [3] a causal link between that breach and the injury alleged; and [4] actual damage or loss suffered . . . as a consequence.'" *Menkes v. 3M Co.*, No. 17-573, 2018 WL 2298620, at *3 (E.D. Pa. May 21, 2018) (alterations in original) (quoting *Wright v. Eastman*, 63 A.3d 281, 284 (Pa. Super. Ct. 2013)). While "Section 402A governs only strict liability claims[ ] and . . . common law negligence claims are subject to a different standard and analysis," *Schwartz v. Abex Corp.*, 106 F. Supp. 3d 626, 635 (E.D. Pa. 2015) (citing *Tincher*, 104 A.3d at 381-84), "[p]roximate causation is a necessary element in proving a tort case under theories of

---

[2] In *Tincher v. Omega Flex*, 104 A.3d 328, 399 (Pa. 2014), the Pennsylvania Supreme Court declined to adopt the Restatement (Third) of Torts and reiterated that "Pennsylvania remains a Second Restatement jurisdiction . . . ."

strict liability or negligence." *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 492 (3d Cir. 1985) (citing *Sherk v. Daisy-Heddon*, 450 A.2d 615, 617 (Pa. 1982); Restatement (Second) of Torts, §§ 430, 431 (1965)); *see also Sikkelee v. AVCO Corp.*, 268 F. Supp. 3d 660, 715 (M.D. Pa. 2015).

3M raises a single issue in its motion for summary judgment. (*See* Doc. 19, *generally*; Doc. 27, *generally*). Specifically, the strict liability and negligence claims fail in the matter *sub judice*, contends 3M, for lack of evidence that its respirators were the proximate cause of Rothenbecker's injuries. (*See id.*). 3M's argument is as follows: respirators are designed to reduce, but not eliminate, exposure to airborne contaminants like silica; its 8710 respirator is designed to reduce a person's exposure to within the PEL in an environment where the concentration of airborne respirable silica is no more than 10-times the PEL; and Plaintiffs have no proof regarding the levels of silica exposure at Rothenbecker's work environments, *i.e.*, "no witness has come forward with any air-monitoring data from Rothenbecker's workplaces[ ] to quantify his exposure levels." (Doc. 19, 5-9). Given this, 3M concludes that "Plaintiffs cannot prove that the 3M 8710 respirator failed to perform as designed and intended, such that its use was the proximate cause of Rothenbecker's injury." (*Id.* at 10).

3M's motion for summary judgment will be denied. 3M's position is essentially that without evidence as to the contaminants present at the sites Rothenbecker worked, a jury will be unable to determine whether "Rothenbecker was inadequately protected because of a defect in the respirator or whether, alternatively, his respirators were simply not the right respirators for the concentrations of silica to which he was exposed." (*Id.* at 9). But 3M does not cite any authority - binding or otherwise - which requires a plaintiff to present such evidence in an action claiming exposure to unsafe levels of contaminants as a result of allegedly defective safety equipment. And, persuasive authority suggests otherwise. *See*, *e.g.*, *Mine Safety Appliance Co. v. Holmes*, 171 S. 3d 442, 450-52 (Miss. 2015) (despite the fact that the plaintiff's

experts "admitted that they did not know the level of silica exposure [the plaintiff] suffered," the court found "not only that there was a genuine issue of material fact, but a reasonable juror could have concluded [the plaintiff] was exposed to a harmful level of silica."); *Fouch v. Bicknell Supply Co.*, 756 S.E.2d 682, 687 (Ga. Ct. App. 2014) ("In cases involving toxic chemicals, a plaintiff must offer proof of general causation - that exposure to a substance is capable of causing a particular injury or disease - and proof of specific causation - that exposure to a substance under the circumstances of the case contributed to his illness or disease. . . . While proving both types of causation involves a question of the concentration levels of the toxin to which the plaintiff was exposed, *there is no specific requirement that the plaintiff show specific air measurement readings or dosage amounts in order to establish causation*." (emphasis added)); *accord Perry v. Novartis Pharm. Corp.*, 564 F. Supp. 2d 452, 463 (E.D. Pa. 2008) ("Courts in toxic tort cases often separate the causation inquiry into general causation - whether the substance is capable of causing the observed harm in general - and specific causation - whether the substance actually caused the harm a particular individual suffered."); *Gregg v. VJ Auto Parts*, Co., 943 A.2d 216, 227 (Pa. 2007) ("it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury."). The Mississippi Supreme Court in *Holmes* succinctly explained why direct evidence of the level of exposure is not required:

> A plaintiff may show an unsafe exposure or dose through circumstantial evidence, so long as that evidence is reliable.
> . . .
> But first, it should be noted that the method of diagnosing silicosis is itself, to some degree, a *post hoc ergo propter hoc* analysis. The parties here did not dispute that the accepted method of diagnosis involves four steps. First, it must be determined that the person was exposed to silica

7

> dust. Second, there must be the passage of sufficient time for the disease to develop. Third, an x-ray of the lungs must show abnormalities, *i.e.*, evidence of internal scarring. And fourth, other causes must be ruled out. Therefore, the medically accepted method of diagnosis requires Y to happen (dust exposure) and, after a period of time, for X to occur (silicosis). The only causal connection beyond the passage of time is x-ray evidence of an injury and the ruling out of other possible causes. These two requirements, however, are sufficient to remove Holmes's evidence from the realm of unreliable coincidence.

*Holmes*, 171 So. 3d at 451.

Here, although Plaintiffs did not offer any direct evidence of Rothenbecker's actual worksite exposure levels, they have submitted evidence that sheet metal workers are exposed to respirable silica levels in excess of government regulations. (*See* Dr. Rose report, 4-7). Specifically, Plaintiffs have presented evidence regarding the levels of airborne respirable silica when cutting or drilling holes in concrete. (*See id*. at 5). According to this evidence, the airborne respirable silica levels when drilling holes in concrete is slightly more than three (3) times the PEL. (*See id*.). There is also record evidence that a sheet metal worker such as Rothenbecker would be overexposed to airborne respirable silica when wearing a 3M 8710 respirator. (*See id*. at 7). Based on this, a material fact remains in dispute as to whether Rothenbecker was inadequately protected from respirable silica based on a defect in 3M's respirators. *See*, *e.g.*, *Word v. Mine Safety Appliances Co.*, No. 14-445, 2016 WL 3034045, at *4 (E.D. Ark. Mar. 25, 2016) (denying summary judgment on claim that air-fed hood failed to properly protect the plaintiff from respirable silica); *Holmes*, 171 So. 3d at 452 (trial court correctly denied the defendant's motion for JNOV as to causation on claim against respirator manufacturer for silicosis-related injuries because of the substantial circumstantial evidence of causation presented by the plaintiff, including evidence of overexposure, dusty work conditions, exposure to concrete dust, and diagnosis of silicosis); *Fouch*, 756 S.E.2d at 689 (reversing trial court's entry of summary judgment because the plaintiff presented "some expert evidence of specific causation" that he was "overexposed to respirable silica because

the study showed that respirable silica levels far exceeded the permissible limit when wearing non-air-supplied hoods.").

## IV. Conclusion

For the above stated reasons, 3M's motion for summary judgment will be denied.

An appropriate order follows.


June 15, 2018 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge