# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN JOSEPH ROTHENBECKER, JR. and )
SHEILA ROTHENBECKER, his wife, )
                                  )     M.D.P.A. No. 3:17-cv-00585-UN2
               **Plaintiffs,** )
v. )
                                    )
**3M COMPANY** )
                                    )
               **Defendant.** )

## PLAINTIFFS' BRIEF IN OPPOSITION TO 3M COMPANY'S MOTION TO EXCLUDE TESTIMONY OF DARELL BEVIS

COME NOW, the Plaintiffs, by and through the undersigned counsel, and file this *Brief in Opposition to 3M Company's Motion to Exclude Testimony of Darell Bevis* and would show unto the Court the following in support thereof:

## I.     INTRODUCTION

Darell Bevis' qualifications have continually been challenged by 3M over a number of years. Despite numerous challenges to Mr. Bevis' qualification and 3M quoting Mr. Bevis' deposition testimony from numerous different cases from various jurisdictions over the years, 3M is only able to produce a few occasions where Mr. Bevis' opinions were excluded by a Court. The Plaintiff in the *Bryant* case had the same counsel as the present Plaintiff. The order in that matter was going to be challenged by Plaintiff's counsel on appeal based on significant errors, but the case settled shortly thereafter. That Court's opinion has no precedent in this case and is not binding upon this Court. Further, the order only addressed the fit test and fit check and did not address the other design deficiencies being alleged in this case. Further, in contrast to the *Dugas* decision cited by 3M, here Plaintiffs have produced research and published work of Bevis regarding the 3M 8710. *See* Exhibit "M".

Further, the Plaintiff has submitted orders from Mississippi, Arkansas, Kentucky, Georgia, and two recent orders from the Eastern District of Arkansas finding Bevis's opinions admissible.[12] *See* Exhibit "A" *Pierce* Order, Exhibit "B" *Wachter* Order, Exhibit "C" *Fortner* Order, Exhibit "D" *Couch* Order, and Exhibit "E" *Fouch* Order. Recently, the Honorable Billy Roy Wilson of the Eastern District of Arkansas denied 3M's motion to exclude Mr. Bevis in a case involving the same respirator at issue in this case. *See* Exhibit "R" *Word* Order, and Exhibit "S" *Geiggar* Order. 3M offers no new arguments that would justify Mr. Bevis' exclusion in this case.

Darell Bevis is an eminently qualified expert. Mr. Bevis worked for a number of years at Los Alamos National Laboratory. Mr. Bevis was trained by and worked alongside one of the most respected individuals regarding respirators, Edwin C. Hyatt. Mr. Bevis was part of the American National Standard Committee that formed the 1980 ANSI Standards for Practices for Respiratory Protection. *See* Exhibit "F" at 5th page of Exhibit. Mr. Bevis remained a member of the subcommittee in 1992. *See* Exhibit "G" at iii. The ANSI Standards are considered the consensus standards of the respirator industry and federal government. Mr. Bevis is one of the most experienced and qualified individuals in the United States when it comes to respiratory protection.

As will be discussed in detail below, Mr. Bevis's entire working career has been devoted to respirators and their use. It is clear from his testimony that Mr. Bevis is qualified through his vast experience to offer opinions in this case. Mr. Bevis's opinions have a reliable

---

[1] The Plaintiffs acknowledge that Mr. Bevis' qualifications have not been addressed by this Court, and that other Courts' rulings on Mr. Bevis are not binding upon this Court. The products at issue in *Pierce* and *Wachter* were AO disposable respirators similar to the 3M 8710. The product at issue in *Fortner* and *Word* was the 3M 8710 and the product at issue in *Geiggar* was the 3M 8500.

[2] There is no Exhibit "L" to Plaintiffs' Brief in Opposition. It was inadvertently skipped when designating the exhibits.

factual basis, fit the particular facts of Plaintiffs' case, and are based on reliable respirator testing methodology.

## II.   LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of this case.

F.R.E. 702.

The trial court judges are charged with the responsibility of acting as gatekeepers in determining whether expert testimony is admissible. *Daubert v. Merrell Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993). "In performing the gate-keeping function proscribed by *Daubert,* this Court is to determine whether the proffered expert is qualified, whether the testimony is relevant, whether it is reliable, and whether it fits, *United States v. Downing,* 753 F.2d 1224, 1226 (3d Cir.1985)." *Haas v. Wyoming Valley Health Care Sys.,* 2007 WL 465118, at *1 (M.D. Pa. Feb. 8, 2007); citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 591 (1993).

The first step under Rule 702 is to examine whether the proffered expert is qualified by virtue of "specialized knowledge" regarding the area of testimony. *Fisher v. Walsh Parts & Serv. Co.*, 277 F. Supp. 2d 496, 504 (E.D. Pa. 2003). "The basis of this specialized knowledge 'can be practical experience as well as academic training and credentials.'" *Fisher,* 277 F.Supp.2d at 504; quoting *Waldorf v. Shuta,* 142 F.3d 601, 625 (3d Cir.1998). The specialized knowledge requirement has been interpreted liberally by the Court. *Id.*; citing *Waldorf,* 142 F.3d

at 625 ("this policy of liberal admissibility of expert testimony 'extends to the substantive as well as the formal qualification of experts.'" quoting *In re Paioli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).)  The Third Circuit has held it would be an abuse of discretion to exclude an expert's testimony "simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate."  *Id.* at 504; quoting *In re: Unisys Savings Plan Litigation,* 173 F.3d 145, 170 (3d Cir.1999), *cert denied Meinhardt v. Unisys Corp.,* 528 U.S. 950, 120 S.Ct. 372, 145 L.Ed.2d 290 (1999).   The Court has noted that at a minimum the proffered expert "must possess skill or knowledge greater than the average layman . . . ."  *Id.*; quoting *Waldorf,,* 142 F.3d at 625, *quoting Aloe Coal Co. v. Clark Equip. Co.,* 816 F.2d 110, 114 (3d Cir.1987), *cert denied* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that in regard to the second two factors, reliability, and fit, that the District Court is to act as "gatekeeper" to evaluate whether an expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Id.* at 504; quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993).   The factors to consider in assessing the testimony of expert is flexible and include the following:

(1) whether the methodology can be and has been tested;

(2) whether the technique has been subjected to peer review and publication;

(3) the known or potential rate of error of the methodology; and

(4) whether the technique has been generally accepted in the scientific community.

*Id.* at 504-05; citing *Daubert*, 509 U.S. at 593-94.  The Supreme Court expanded *Daubert* 's gate

keeping requirement in *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999), to apply to "the testimony of engineers and other experts who are not scientists." *Id.* at 505.   The requirements apply "not only to testimony based on scientific knowledge, but also to testimony based on technical and other specialized knowledge." *Id.*; quoting *Kumho Tire,* 526 U.S. at 141.

". . .Where the reliability of a witness's testimony depends heavily on only the knowledge and experience of the expert, some courts have found that the *Daubert* factors are not always applicable." *Montgomery v. Mitsubishi Motors Corp.,* 448 F.Supp.2d 619, 628 (E.D. Pa. 2006) citing *United States v. Hankey,* 203 F.3d 1160, 1169 (9th Cir.2000) ("Considering the depth of Mr. Anderson's experience and qualifications in the automotive industry, he appears to have a base of knowledge upon which he could form an opinion that, based on what he knows of the testing conducted on the Montero Sport during its design phase, the Montero Sport was not properly designed." *Id.* at 629).   The appropriate mechanism for challenging what can be alleged shaky but admissible experts opinions is through cross-examination.   *Montgomery,* 448 F.Supp.2d at 629.

In regard to fit or assistance to the jury, this factor does not require the Plaintiffs to prove "their case twice."  *Id.* at 631; quoting *Oddi v. Ford Motor Co.,* 234 F.3d 136, 145 (3d Cir. 2000).   The Plaintiffs must only show by a preponderance of the evidence that the expert's opinion are reliable.  *Id.* at 632; quoting *In re Paoli,* 35 F.3d at 744.   In assessing fit, this Court must "examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used."  *Id.;* quoting *Oddi,* 234 F.3d at 146.

III.    ARGUMENT

A.    **Bevis's Qualifications Regarding Respirator Design.**

3M confuses the substance of Mr. Bevis' testimony. The Plaintiff is not offering Mr. Bevis to testify about how to design a respirator (engineer drawings, manufacturing specs, etc.). Instead, Bevis will testify how the final design of the 3M 8710 was defective in many respects which causes the user to be exposed to respirable silica.

3M cites extensively to Judge Starrett's order in the *Bryant* case to support exclusion of Mr. Bevis. First, Judge Starrett's opinion has no precedent in this case and is not binding upon this Court. Second, counsel believes there were significant errors in Judge Starrett's order that would have been challenged had the case not settled. Most telling is that Judge Starrett found Plaintiff's employer did not do a fit test on the 3M 8710. It was impossible to perform a fit test on the 3M 8710 until sometime in 1982. This was after that Plaintiff's use of the 3M 8710. Further, Judge Starrett found that Bevis' work had not been subjected to scientific scrutiny nor had any of his opinions related to the 3M 8710 been published. This was clearly not true as evidenced by Exhibit "M" which was a NIOSH sponsored study that involved the 3M 8710. This is a sharp contrast to Judge Starrett's finding that Bevis was unable to produce documentation of his research. 78 F.Supp.3d at 631. Therefore, Judge Starrett's order was not based on the facts presented to him. Third, Judge Starrett's order only addressed the fit test and fit check. The order did not address the other design deficiencies being alleged in this case.

Plaintiffs have submitted seven competing orders from other jurisdictions, including three orders from the Eastern District of Arkansas, finding Bevis' opinions to be admissible. *See* Exhibits "A" through "E", Exhibit "R", and Exhibit "S". Attached as Exhibit "H" is a portion of

the trial transcript from the *Patrick Claiborne, et al.* trial recently conducted in the Circuit Court of Claiborne County, Mississippi.  Mr. Bevis was accepted as an expert by The Honorable Lamar Pickard.

Mr. Bevis testified that he has 53 years of experience in respiratory protection.  *Id.* 617:24.  Mr. Bevis trained under Ed Hyatt who was considered the grandfather of the respirator in the United States.  *Id.* 618:9-20.  Mr. Bevis went to work at Los Alamos National Laboratory as a junior industrial hygienist.  *Id.* 619:1-8.  His initial job duties were to work with respirators, train users, and perform fit testing.  *Id.*  As a senior industrial hygiene technician, Mr. Bevis was responsible for the complete respirator program, did air sampling, designed sampling equipment, and industrial hygiene overview of the beryllium shop.  *Id.* 623:6-19.

In 1972, Mr. Bevis became a respirator training specialist at Los Alamos where he developed a training program in respirator protections and presented it to the Atomic Energy Commission, the Directorate of Regulatory Standards, and personnel of OSHA and NIOSH.  *Id.* 623:20-625:8.  From 1974 to 1976, Mr. Bevis served as an industrial hygienist at Reynolds Electric Engineering Company where he had industrial hygiene duties along with responsibility for the respirator program.  *Id.* 626:20-627:5

It is true that Mr. Bevis is not a "certified" industrial hygienist which now requires a degree, but Mr. Bevis is an industrial hygienist.  When Mr. Bevis became an industrial hygienist, experience could substitute for education, and he had sufficient experience to join as a full member of the American Industrial Hygiene Association.  *Id.* 627:20-628:16.  Mr. Bevis is currently a member of the AIHA. Mr. Bevis designed and developed the NIOSH 593 course which was a course presented by NIOSH[3] for respirator program supervisors.  *Id*. 628:17-629:13.

---

[3] NIOSH is the agency that certified and approved the 3M 8710 respirator at issue in this case.

Mr. Bevis presented courses for the U.S. Navy, Army, and Coast Guard.  *Id.* 630:7-11. Mr. Bevis assisted OSHA in developing a respiratory protection course at OSHA.  *Id.* 630-31.

Mr. Bevis testified that he has kept abreast of the standards in the respiratory protection field.  *Id.* 631-632.  Mr. Bevis tested respiratory equipment at Los Alamos and has experience with different designs of respirators.  *Id.* 632:4-633:10.  The Circuit Court allowed Bevis to testify as an expert witness in the fields proffered. *Id.* 633:18-20.

In sum, Mr. Bevis's entire working career has been devoted to respirators and their use. It is clear from his testimony that Mr. Bevis is qualified through his vast experience to offer opinions in this case.  *See also* Exhibit "I" Curriculum Vitae of Darell Bevis.  Attached as Exhibit "J" is a listing of Mr. Bevis's prior testimony.  Mr. Bevis has been allowed to offer testimony at trial in no less than seven (7) cases.

Mr. Bevis was deposed in the *R.C. Harris* case and portions of his deposition are attached as Exhibit "K".  Mr. Bevis explained his expertise in respirator design.  He testified that in his 54 years of experience he has handled and fit-tested most of the filtering-facepiece respirators on the market along with all other respirators.  *Id.* 222:20-223:7.  Through this experience, Mr. Bevis has obtained specialized knowledge regarding the design mechanism of respirators.  *Id.* 223:8-12.  He testified that when he first became involved with respiratory protection there were limited options so the design of the respirator was very important in finding a respirator that properly fit.  *Id.* 223:16-25.  Through his work at Los Alamos and over the years, Mr. Bevis has become intimately familiar with the design characteristics of respirators including the face seal, straps, inhalation/exhalation valves, and the general configuration of respirators.  *Id.* 224:1-225:4. While working for Los Alamos, Mr. Bevis consulted with American Optical, MSA, Willson, and 3M on the design of their various respirators.  *Id.* PP. 59-70; specifically as to 3M,

66:23-67:14.  3M brought prototypes of the 8710 to Los Alamos.  *Id.* 69:23-70.  Mr. Bevis testified that when you perform fit testing on a respirator you are evaluating the design and configuration of the respirator.  *Id.* at 58:3-25 and 268:6-12.  There is no dispute in this case that Mr. Bevis has extensive experience in fit-testing respirators.

Upon the request of NIOSH, he developed the NIOSH 593 Course which was the first course available to the industry to teach about respirators, parts of the respirator, how to fit test, and most importantly about the design of respirators.  *Id.* 225:11-20.  Mr. Bevis developed the very course NIOSH, who approved the 3M 8710, uses to teach people about all aspects of respiratory protection.

Pursuant to the ANSI Standards, Mr. Bevis is qualified to testify about the design of respirators.  The ANSI standards are consensus standards that were created by professionals in the field, respirator manufacturers, NIOSH, OSHA, and the Mine Safety Health Administration. *See* Rose Deposition at 78:4-22.  The 1980 ANSI standards was in effect for the first part of Rothenbecker's career.  Section 3.5.2 recommends that the industrial hygiene department of the employer should administer the respirator program.  Exhibit "F" at P.10  Respirator selection should be based upon "the physical characteristics, functional capabilities, and limitations of the various types of respirators.  *Id.* at Section 3.5.5(6).   The physical characteristics, functional capabilities, and limitations all involve the **design** of the respirator.  *See* Rose Depo at 81:4-9. Section 6.2(6) requires experts such as Bevis to be familiar with the characteristics and limitations of available respirators in order to administer a respirator program.  *Id.*  The same standards are found in the 1992 ANSI standards.  *See* Exhibit "G" at Sections 5.1, 5.2, 7.1.4,

Bevis has previously testified the characteristics of a respirator (face seal, straps, valves) involve the design of a respirator.  Exhibit "K" 224:1-225:4.   Through his numerous years of

experience, Bevis has developed specialized knowledge regarding these design characteristics. *Id.* 225:6-20. It is also the reason NIOSH hired Bevis to develop and teach the NIOSH 593 Course on respiratory protection. *Id.*

3M argues that Bevis is not an engineer and has not reviewed the design drawings for the 8710 or 8210. Bevis was questioned about this in his deposition attached as Exhibit "Q". Bevis was shown the engineering drawing for the American Optical R1050 a similar filtering facepiece respirator. *Id.* at 52:2-53:25. Bevis testified the engineering drawing allows construction of molds and machines to build the masks. *Id.* He testified that nothing within the engineering drawings would allow him to form an opinion as to whether the respirator would work once manufactured. *Id.* It is the finished product's design that is the subject of this case, not the drawings or diagrams that led to the production of the 8710 and 8210.

Attached as Exhibit "M" is a 1974 quarterly progress report from Los Alamos Scientific Laboratory entitled *Respiratory Studies for the National Institute for Occupational Safety and Health (NIOSH)*. Darell Bevis was a co-author of this study. Page 36 of this study clearly shows Bevis did research and testing on the 3M 8710 where all 16 man tests conducted failed the performance criteria. *Id.* On Page 39 of the study, the Court should note the authors reviewed the Quality Control Manual for the 3M 8710 respirator and forwarded their comments to NIOSH. *Id.* In addition, the authors noted they tested the 3 currently approved single use valveless respirators, which included the 3M 8710. *Id.* at P. 42. The testing found the overall respirator efficiency ranged from 70 to 90% for the single use respirators. *Id.* Based on this testing, the authors recommended a protection factor of 5 be assigned to the 3M 8710. Mr. Bevis testified that respirator manufacturers relied upon Los Alamos to evaluate and make comments about their respirators which is shown on Page 39 of Exhibit "M". Exhibit "K" at 236:8-15.

Attached as Exhibits "N" and "O" are two additional respirator studies in which Darell Bevis was a co-author while at Los Alamos.

Most notably for this Court's consideration, is the testing performed by Bevis on the 3M 8710 at Los Alamos documented in Exhibit "M". Bevis' research and testing while working at Los Alamos is directly relevant to the issues in this case, whether the 3M masks failed to perform as advertised. 3M argues that an important factor is "whether an expert's expertise was developed for litigation or grew 'naturally and directly out of research . . . conducted independent of the litigation' is a factor to consider when adjudicating a *Daubert* motion." Doc [40] at P. 8. Bevis was not a testifying expert in the 1970's when he was conducting research on the 3M 8710. Therefore, his expertise regarding the 3M 8710 naturally flowed from his research at Los Alamos. This factor weighs in favor of admitting Bevis's testimony.

Bevis was questioned about this study in his deposition given in this case. *See* Exhibit "Q" Bevis Depo from Rothenbecker at PP. 58-63. The study was sponsored by the National Institute of Occupational Safety and Health (NIOSH). *Id.* 58:24-59:3. The studies were conducted on 8710 respirators that were available for consumer use at the time. *Id.* 60:3-6. Bevis conducted filter efficiency tests and man tests. *Id.* 60:10-12. These tests would be testing the design efficiency of the 8710. *Id.* 61:1-4. The 8710 had an average of 12.5 percent leakage. *Id.* 61:5-9. There was a 16 man test panel and the 8710 failed the proposed performance criteria for all 16. *Id.* 61:16-24. The study reviewed the quality control manual for the 8170 and provided comments to NIOSH. *Id.* 62:8-15. The study determined that the proposed protection factor to be assigned to the 8710 was five. *Id.* 62:16-20.

In sum, almost all of Mr. Bevis's career has focused on respirators, their use, their design and features, and their limitations based on design. With regard to respirator design and limits of

respirators, Mr. Bevis is far from a layman as alleged by 3M.  Mr. Bevis worked for the Los Alamos National Laboratory which was extensively involved with testing numerous respirators, including the 3M 8710, over several years while Mr. Bevis was employed there.  In contrast to 3M's arguments, Mr. Bevis is certainly qualified to testify about respirators and their known use limitations based on their features and designs.  The opinions are reliable and are founded on the principles of respirators, their use, and their limitations.  The testimony would assist the jury in understanding why the 3M 8710 was defectively designed.

Pursuant to Rule 702, it is clear that Mr. Bevis has substantial knowledge, skill, training, and experience regarding industrial hygiene and respirator design. Further, Bevis has researched and tested the 3M 8710 which was published on behalf of NIOSH, the very organization that certifies the 3M 8710.

**B.      The 3M 8710 Failed to Meet the Approval Requirements of NIOSH.**

Plaintiff's counsel has previously deposed Philip Eitzman, a 30(b)(6) representative of 3M.  Mr. Bevis has read and relied upon this testimony in forming his opinions regarding the 3M 8710.  Mr. Bevis was deposed in *Jerry Clanton v. American Optical, et al.* regarding the 30(b)(6) testimony of 3M.  *See* Exhibit "P" at PP. 92-101 Bevis Deposition in *Clanton*.  NIOSH approval requires the 3M 8710 to pass the silica dust test as part of the quality control plan for the 8710. *Id.* 92:7-17.  3M requested and received approval of a less stringent and faster test called the DOP test.  *Id.* 92:19-93:2.  3M represented to NIOSH they had correlated the DOP test results to that of the more stringent and longer silica dust test.  *Id.* 93:3-24.

From a review of internal documents produced by 3M, it was evident that less than half of the 3M 8710's produced would pass the silica dust test.  *Id.* at 94-95.  It was also clear that 3M quality control managers indicated the DOP test had no valid correlation to the silica dust test.

*Id.* 95:18-23.   3M never communicated the DOP test issues to NIOSH.   *Id.* 95:25-96:7.   Mr. Bevis stated that at this point 3M should have stopped selling the 3M 8710 as NIOSH approved because it was not passing 3M's quality control plan.   *Id.* at 96.   Further, the only two documented quality control tests, one in 1982 and one in 1988, are invalid tests because the relative humidity data is not noted on either test.   *Id.* at 96-97.

When 3M was trying to expedite the redesign of the 8710 in the 1980's, 3M made numerous changes to the silica dust chamber used in the silica dust test.   Again, 3M failed to seek approval for any of these changes in violation of 30 CFR Part 11.41.   *Id.* at 98-100.   It was also a violation of the original certification of the 8710.   *Id.* 100:18-21.   The failure to seek approval from NIOSH voided 3M's quality control plans.   *Id.* 100:23-101:3.   Finally, Mr. Bevis testified that based on the documents and information he reviewed it was improper for 3M to sell the 8710 from 1972 until 1998 as a NIOSH approved respirator.   *Id.* 101:4-15.   Bevis confirmed his testimony would be the same in this case.   *See* Exhibit "Q" at 71:4-11.

Bevis has also reviewed and relied upon testing on the 8710 performed by another respirator manufacturer American Optical.   That testing showed the 8710's all failed the final resistance requirement of NIOSH for certification.   *Id.* at 75:6-76:2.

Based on the testimony of Philip Eitzman, Darell Bevis, and testing performed by American Optical, 3M violated numerous requirements of NIOSH certification.   3M failed to inform NIOSH of problems with the silica dust test and lack of correlation between the DOP test and silica dust test.   Further, 3M failed to seek approvals to modifications of its quality control plan for the 3M 8710.   The 8710 constantly failed to pass the quality control plans implemented by 3M.   The majority of the 8710s produced could not pass the silica dust test.   Based on this information, the NIOSH certification of the 8710 was void.   This is evidence of the defective

design of the 8710 claimed by the Plaintiff and his experts in this case and Bevis is qualified to offer opinions on these subjects.

**C.      Bevis's Opinions Have a Reliable Factual Basis.**

3M argues that Bevis's opinions are not supported by any facts and lack any identifiable methodology.  As noted in his deposition, Bevis reviewed the deposition of Mr. Rothenbecker. *See* Exhibit "Q" Bevis Depo in Rothenbecker at 64:5-16.  Bevis testified this was sufficient description of the work sites and their conditions.  Bevis discussed the fact that Rothenbecker followed 3M's instructions for conducting a user seal check each time he wore the filtering facepiece respirators. *Id.* 65:12-22.  Therefore, Bevis had substantial facts about Rothenbecker's working condition, exposure to respirable silica, and the products he used.  As an industrial hygienist and respirator expert, Bevis does not need to personally interview the Plaintiff, review his medical records, or visit the work site.  This information was obtained from Plaintiff's deposition which is allowed under Rules 702 and 703.

Bevis discussed a document from Aero Company which is now owned by 3M Company. The document stated "Air tends to take the path of least resistance, which in the case of the respirator is between the sealing area and the face." *Id.* at 70:3-13 and Exhibit 14 to Deposition. Bevis testified that is an extremely important concept with the 8710 and 8210 because there are only two pathways for air to travel, the filter media itself and around the seal because they lack inhalation valves. *Id.* 70:14-71:3.

The Plaintiffs would respectfully submit that Bevis' testimony demonstrates a specialized knowledge regarding respirator design.  Bevis' testimony is reliable as it is based on his own personal published research at Los Alamos National Laboratory and the available evidence in this case.  Bevis' testimony fits this case because it involves the design deficiencies of the 3M

8710 and 8210 and how those deficiencies would have caused Mr. Rothenbecker to be exposed to respirable silica.  The requirements of Rule 702 have been met, and the Plaintiffs would respectfully request this Court to deny 3M's motion.

**D.     Bevis's Testimony Should Not Be Excluded Under Rule 403.**

While Bevis's opinions are certainly prejudicial to 3M, the prejudicial effect does not outweigh the probative value of his opinions discussed above.  Therefore, Plaintiff would submit that Bevis's opinions should not be excluded under Rule 403 either.

**E.     Specific Response to Issues Raised by 3M.**

In FN3, 3M states that "Mr. Bevis's opinion that the 3M 8710 respirator did not provide a user with adequate protection against silica has been excluded as unreliable under *Daubert. See Bryant,* 78 F.Supp.3d at 633."  3M fails to direct this Court's attention to the opinion from the D.C. Circuit and OSHA finding that the 3M 8710 did not provide adequate protection and found its protection factor should only be 5.  "In 1978, OSHA rated single use respirators at five because of the considerable **risk of undetected leakage** when worn at work."  *National Cottonseed Product Assn v. Brock*, 825 F.2d 482, 493 (D.C. Cir. 1987) *citing* Fed. Reg. 27,386 (1978).  The D.C. Circuit court to hold that the fit check cannot be effectively performed on these respirators.  As the D.C. Circuit Court explained:

> The PPFC (positive pressure fit check) procedure is an effective daily check for the fit of a gas-mask style respirator.  Respirators of that type confine intended air intake to valves that can be blocked off easily by the employee's hands.  By contrast, the entire surface of a disposable respirator is intended to permit air intake.  OSHA recognized that, in the case of disposable respirators, the workers hands cannot effectively block intended air intake, and that intake only, while leaving unobstructed air taken in because of the respirator's improper fit.  **We think it evident that OSHA did not rule without reason when it adhered to the view that no test appropriate for daily use adequately assured the proper fit for disposable respirators.**

*National Cottonseed Product Assn*, 825 F.2d at 492-3 (D.C. Cir. 1987) *citing* Fed. Reg. 27,386

(1978).  As observed by the Court in *National Cottonseed*, 3M did not challenge this decision in 1978.  It has been judicially determined that the 3M 8710 did not offer sufficient protection from silica.  The finding by OSHA was not appealed by 3M.

In FN6, 3M states "OSHA assigned half-mask respirators like the 3M 8710 and 8210 a protection factor of 10.  3M cites to OSHA's final rule in 2006 which is after much of the exposure period in this case.

On page 4, 3M rehashes arguments made in its Motion for Summary Judgment that Bevis has not seen any air-monitoring date for Rothenbecker's worksites and has no information about Rothenbecker's actual exposure.  The Court rejected these arguments in denying 3M's motion for summary judgment.  *See* Doc [32] at *6-8.

On Page 9, 3M argues that Bevis should not be allowed to testify to medical causation issues.  Bevis is not being offered to testify about medical causation.

On Page 10, 3M argues "the methodology for evaluating respirator design, including filter efficiency, filter material choice, and fit has been the subject of many scholarly articles and federal regulations."  The Plaintiffs would point the Court to Exhibit M which is a published study conducted by Bevis at Los Alamos that tested the filter efficiency of the 8710.   Further, this argument undermines 3M's arguments that Bevis isn't an engineer so he cannot discuss the design of the 8710.  3M readily admits the design of a respirator concerns filter efficiency and fit which are areas Bevis is unquestionably qualified.  *See* Page 7 of Doc [40] (acknowledging Bevis has substantial experience with training regarding fit of respirators).

On page 12, 3M argues that Bevis did not personally interview witnesses in this case.  This is certainly not required to form expert opinions under Rule 702.  Further, Bevis reviewed all of the co-worker testimony available in this case regarding the working conditions of Mr.

Rothenbecker.  *See* Exhibit "Q" at 64:5-16.

On Page 13, 3M argues that Bevis has no information whether the respirators used by Rothenbecker were a good fit.  Bevis reviewed pictures of Rothenbecker donning a 3M 8210 and based on his review of the pictures the mask covered all of the proper areas of Rothenbecker's face and there were no facial features that would have interfered with the seal of the mask.  Bevis testified he got the best fit possible from the 8710 and 8210.   Exhibit "Q" at 78:24-80:17.

IV.     **CONCLUSION**

As 3M argues Rule 702 requires this Court to answer the following questions: (1) Does the witness possess specialized knowledge? (2) Is the knowledge relevant to the issue on which the witness seeks to testify? Doc [40] at P. 5 citing *Fedor v. Freightliner, Inc.,* 193 F.Supp.2d 820, 826 (E.D. Pa. 2002).  From the above arguments, it is clear that Bevis possesses specialized knowledge about respirators, and in particular the 8710 and 8210.  Further, this knowledge is directly relevant to whether Rothenbecker would have been exposed to silica while wearing the 8710 and 8210.  Based on the foregoing, Bevis's opinions in this case should not be excluded.  Mr. Bevis's opinions clearly satisfy the requirements of Rule 702 and *Daubert*, and he should be allowed to testify at the trial of this matter.

WHEREFORE PREMISES CONSIDERED, the Plaintiff respectfully requests this Court to deny *3M Company's Motion to Exclude Testimony of Darell Bevis* and to grant any other relief it deems appropriate.

DATED, this the 27th day of August, 2018.

RESPECTFULLY SUBMITTED,

JOHN JOSEPH ROTHENBECKER, JR. and
SHEILA ROTHENBECKER, his wife

By:   */s John T. Givens*_____
     John T. Givens
     *Attorney for Plaintiffs*

Of Counsel:

Theron J. Solomon, Esquire
Barry H. Dyller, Esquire
Dyller Law Firm
88 North Franklin Street
Wilkes-Barre, PA 18701
Telephone No.:  (570) 828-4860

John T. Givens, *Pro Hac Vice*
PORTER & MALOUF, P.A.
Post Office Box 12768
Jackson, Mississippi  39236-2768
Telephone:   (601) 957-1173
Facsimile:   (601) 957-7366

## CERTIFICATE OF SERVICE

I, JOHN T. GIVENS, the undersigned counsel for Plaintiffs, do hereby certify that I have this date electronically filed the foregoing instrument with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

DATED, the 27th day of August, 2018.

    *s/ John T. Givens*_____
    John T. Givens